**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| WALTER A. TORMASI, | : | |
| | : | Civil Action No. 08-5886 (JAP) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GEORGE W. HAYMAN, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff pro se
Walter A. Tormasi
New Jersey State Prison
Second & Cass Streets
P.O. Box 861
Trenton, NJ 08625

**PISANO**, District Judge

Plaintiff Walter A. Tormasi, a prisoner confined at New Jersey State Prison in Trenton, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.  BACKGROUND

The following factual allegations are taken from the
Complaint and are accepted as true for purposes of this review.

Plaintiff Tormasi alleges that, while confined at New Jersey
State Prison, he filed United States Provisional Patent
Application No. 60/568,346 with the United States Patent and
Trademark office.  On May 17, 2004, Plaintiff Tormasi assigned to
Advanced Data Solutions Corporation ("ADS") all his interest in
his provisional patent application, in exchange for which he
received all outstanding shares of ADS common stock and became
its sole owner.  On January 10, 2005, Plaintiff Tormasi filed
Patent Application No. 11/031,878 and, on February 7, 2005,
assigned to ADS all of his interests in that patent application.
On January 29, 2008, the U.S. Patent and Trademark Office issued
Patent No. 7,324,301, stemming from Plaintiff Tormasi's
Application No. 11/031,878.  ADS is the registered owner of
Patent No. 7,324,301.

The Complaint alleges that, on March 3, 2007, the defendants
seized personal property consisting, for purposes of this action,
of the following: (1) miscellaneous corporate paperwork;[1]
(2) patent-prosecution documents; (3) an unfiled provisional

---

[1] The seized corporate paperwork is alleged to include a
patent assignment agreement; corporate resolutions authorizing,
ratifying, and adopting the assignment agreement; shareholder
ledgers; minutes of shareholder meetings; tax information and
forms; and other undescribed related legal documents.

patent application; (4) several floppy diskettes; and (5) various legal correspondence between Plaintiff Tormasi and his attorney with respect to the patent applications and the business of ADS.

Plaintiff Tormasi alleges that he has pursued various administrative remedies for the return of his property.  He alleges that Assistant Ombudsman Karen Boyd, an employee of the Department of Public Advocate, told him in a letter dated January 17, 2008, that "Please be advised that I met with Senior SID Investigator Wojiechowicz about the return of your property.  He advised me that all permitted property was already returned."

Plaintiff Tormasi alleges that he needs the confiscated property to prove his ownership of ADS to the satisfaction of interested third parties.

> Absent such proof of ownership of ADS, plaintiff
> Tormasi is unable to directly or indirectly benefit
> from his intellectual-property assets, either by
> selling all or part of ADS; by exclusively or non-
> exclusively licensing his '301 patent to others; by
> using ADS or his '302 patent as collateral for
> obtaining personal loans or standby letters of credit;
> or by engaging in other monetization transactions
> involving ADS or its intellectual-property assets.

(Complaint, ¶ 22(a).)  Plaintiff Tormasi also alleges that the confiscation of his corporate paperwork has prevented him from filing tax returns with the Internal Revenue Service on behalf of ADS.  Plaintiffs allege that, by confiscating the corporate records, Defendants have violated their First Amendment right to just compensation for taking property, their Fifth and Fourteenth

Amendment rights to due process in connection with deprivation of property, and their right of access to the Internal Revenue Service.

Further, the Complaint alleges that, without patent-prosecution documents, Plaintiffs are unable to enforce their patent rights by filing infringement actions.  Plaintiffs allege that, by confiscating their patent-prosecution records, Defendants have deprived them of their right of access to the Courts.

The Complaint alleges that, without the unfiled provisional patent application, Plaintiffs are unable to proceed with a patent-prosecution before the U.S. Patent and Trademark Office. Plaintiffs allege that Defendants' confiscation of the unfiled provisional patent application deprives them of their right of access to the United States Patent and Trademark Office and their right to just compensation for the taking of property under the Fifth and Fourteenth Amendments.

Plaintiff Tormasi alleges that the confiscated floppy diskettes contain text files related to his conviction for receiving stolen goods.  He alleges that he has post-conviction relief petitions pending in state court and that, if they are unsuccessful, he may bring a federal habeas corpus action.  He contends that confiscation of his floppy diskettes deprives him

of his right of access to the courts, including his right to represent himself in his pending state proceedings.

Plaintiff Tormasi contends that Defendants have confiscated legal correspondence relating to his patent applications. Plaintiff Tormasi contends that confiscation of his legal correspondence violated his right to equal protection, because he has been treated differently from other similarly situated prisoners.  Plaintiffs Tormasi and ADS also allege that all of the constitutional violations alleged in the Complaint are asserted against them selectively, in violation of their right to equal protection.

Plaintiffs Tormasi and ADS also allege that the constitutional violations alleged herein were undertaken in retaliation against them for exercising their constitutional rights, as described in the Complaint.

All of the above claims are brought against Defendants George W. Hayman (Commissioner of the New Jersey Department of Corrections, James Barbo (Director of the Division of Operations within DOC), NJSP Administrator Michelle Ricci, Associate Administrators Jeffrey Bell, James Drumm, Donald Mee, Jr., and Charles Warren, and Special Investigations Division Investigators Derek Butler, Dolce, Harrison, Maginnis, Victor Sierra, and Vincent Wojciechowicz.

In addition, Plaintiffs allege that Defendants George W. Hayman, James Barbo, Michelle Ricci, Jeffrey Bell, James Drumm, Donald Mee, Jr., and Charles Warren, are liable to them because of their failure to train and supervise Defendants Derek Butler, Dolce, Harrison, Maginnis, Victor Sierra, and Vincent Wojciechowicz.

In addition, Plaintiffs also assert that Defendants are liable to them under New Jersey state law of inverse condemnation.

Plaintiffs seek compensatory and punitive damages and injunctive relief.

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain <u>in forma pauperis</u> and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2) (<u>in forma pauperis</u> actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must

6

"accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

In addition, a complaint must comply with the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will
not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106
S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
dismiss, courts "are not bound to accept as true a
legal conclusion couched as a factual allegation").
Factual allegations must be enough to raise a right to
relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007)

(citations omitted). <u>See also</u> <u>Morse v. Lower Merion School</u>

<u>Dist.</u>, 132 F.3d at 906 (a court need not credit a <u>pro</u> <u>se</u>

plaintiff's "bald assertions" or "legal conclusions").

Rule 10(b) provides:

A party must state its claims ... in numbered
paragraphs, each limited as far as practicable to a
single set of circumstances.  ...  If doing so would
promote clarity, each claim founded on a separate
transaction or occurrence ... must be stated in a
separate count or defense.

Rule 20(a)(2) controls the permissive joinder of defendants in

pro se prisoner actions as well as other civil actions.

Persons ... may be joined in one action as defendants
if:
        (A) any right to relief is asserted against them
jointly, severally, or in the alternative with respect
to or arising out of the same transaction, occurrence,
or series of transactions or occurrences; <u>and</u>
        (B) any question of law or fact common to all
defendants will arise in the action.

(emphasis added). <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252

Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th

Cir. 2007).

III.  <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of <u>respondeat superior</u>.  <u>See</u> <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); <u>Natale v.</u>

9

Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

IV.   ANALYSIS

A.   Application to Appear on Behalf of Corporation

Plaintiff Tormasi purports to appear here on behalf of Plaintiff Advanced Data Solutions Corporation ("ADS"), which the Complaint describes as an intellectual-property holding company incorporated in the State of Delaware and having its principal office and mailing address at 1828 Middle Road, Martinsville, New Jersey. The Complaint describes Plaintiff Tormasi as the sole shareholder and authorized agent of ADS.

Plaintiff Tormasi may not appear here on behalf of ADS.

It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel. As the courts have recognized, the rationale for that rule applies equally to all artificial entities.

Rowland v. California Men's Colony, Unit II Men's Advisory Counsel, 506 U.S. 194, 201-03 (1993) (collecting cases).  See also 28 U.S.C. § 1654; U.S. ex rel Mergent Services v. Flaherty, 540 F.3d 89, 92 (sole shareholders of corporations are not allowed to represent such corporations pro se).  Accordingly, the claims of ADS will be dismissed without prejudice.

B.   Application for Leave to Proceed In Forma Pauperis

After pre-paying the $350 filing fee for a civil complaint, Plaintiff Tormasi applied for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.[2]

In support of his application, Plaintiff Tormasi has submitted an affidavit that includes, in the statement of assets, a reference to the substance of this Complaint, in which he asserts that he is the sole shareholder of Advanced Data Solutions Corporation, an intellectual property holding company. Nowhere, in either the application or the Complaint, does Plaintiff Tormasi describe fully the assets of ADS or ascribe any value to his interest in ADS.  In the absence of any valuation for this asset, the Court will deny the application for leave to proceed in forma pauperis, without prejudice to Plaintiff Tormasi filing a new and complete application.

---

[2] The Court notes that only a natural person may qualify for treatment in forma pauperis under § 1915.  See Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201-11 (1993).

11

C.    Claim for Denial of Access to Courts

     The constitutional right of access to the courts is an
aspect of the First Amendment right to petition the government
for redress of grievances.  Bill Johnson's Restaurants, Inc. v.
NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional
guarantee of due process of law has as a corollary the
requirement that prisoners be afforded access to the courts in
order to challenge unlawful convictions and to seek redress for
violations of their constitutional rights.  Procunier v.
Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds,
Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also
Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)
(chronicling various constitutional sources of the right of
access to the courts).

     In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme
Court held that "the fundamental constitutional right of access
to the courts requires prison authorities to assist inmates in
the preparation and filing of meaningful legal papers by
providing prisoners with adequate law libraries or adequate
assistance from persons trained in the law."  The right of access
to the courts is not, however, unlimited.  "The tools [that
Bounds] requires to be provided are those that the inmates need
in order to attack their sentences, directly or collaterally, and
in order to challenge the conditions of their confinement.

12

Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury." <u>See</u> <u>Lewis</u>, 518 U.S. at 348-55 and n.3 (1996); <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, the Complaint fails to state a claim with respect to Plaintiff Tormasi's desire to pursue patent violation litigation, as impairment of the capacity to litigate with respect to personal business interests is "simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. at 355.  In addition, however, Plaintiff Tormasi alleges that his ability to pursue state and federal collateral post-conviction relief is impaired by the confiscation of floppy diskettes containing text files related to his conviction for receiving stolen goods.  This claim will be permitted to proceed as against Defendant Vincent Wojciechowicz, the only defendant described in the Complaint as having personal involvement in the confiscation and/or retention of Plaintiff Tormasi's floppy diskettes.

13

D.   <u>Claims for Deprivation of Property</u>

An unauthorized deprivation of property by a government actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.  <u>Hudson v. Palmer</u>, 468 U.S. 517, 530-36 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527, 543-44 (1981), <u>overruled in part on other grounds</u>, <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986).  In the context of prison confiscation of alleged contraband, a post-deprivation remedy may satisfy the requirements of due process, even if the prisoner's personal property was confiscated pursuant to an established policy.  <u>See</u>, <u>e.g.</u>, <u>Barr v. Knauer</u>, 2009 WL 962684 (3d Cir. April 10, 2009) (approving post-deprivation grievance remedy following confiscation of electric razor); <u>Monroe v. Beard</u>, 536 F.3d 198, 209-10 (3d Cir. 2008) (in light of prison's legitimate security needs, pre-deprivation notice is not constitutionally required), <u>cert. denied</u> 129 S.Ct. 1647 (2009); <u>Tillman v. Lebanon County Corr. Fac.</u>, 221 F.3d 410, 422 (3d Cir. 2000) (prison grievance procedure satisfies procedural due process concerns where state must take quick action or where it is impractical to provide meaningful predeprivation process).  The existence of a prison post-deprivation grievance remedy forecloses any due process claim, even if an inmate is dissatisfied with the result of the

process.  <u>Iseley v. Horn</u>, 1996 WL 510090, *6 (E.D. Pa. Sept. 3, 1996).

Here, Plaintiff Tormasi alleges that he initiated a post-deprivation grievance under the procedure in place at New Jersey State Prison,[3] but that Defendants Michelle Ricci, Jeffrey Bell, James Drumm, Donald Mee, Jr., and Charles Warren refused to adjudicate his administrative grievance, which was returned to him along with DOC Corrective Action Form IRSF-103 advising him to write directly to Special Investigations Division investigators Derek Butler, Dolce, Harrison, Maginnis, Victor Sierra, and Vincent Wojciechowicz.  Plaintiff Tormasi further alleges that he wrote to Defendant Wojciechowicz, who never responded.  Finally, Plaintiff Tormasi alleges that he wrote to Assistant Ombudsman Karen Boyd, in the Department of Public Advocate, who told Plaintiff Tormasi that Defendant Wojciechowicz had advised her that all permitted property had been returned.

New Jersey law provides an adequate post-deprivation administrative grievance remedy.  Although the allegations of the Complaint do not clearly reveal whether the defendants involved in that process adhered to that administrative procedure with respect to Plaintiff Tormasi's claims, New Jersey also provides a

---

[3] The New Jersey Administrative Code sets forth regulations regarding prisoner personal property, seizure of contraband, and claims for deprivation of personal property.  <u>See</u>, <u>e.g.</u>, N.J.A.C. 10A:1-11.1 et seq. (personal property of inmates), 10A:2-6.1 (claims), and 10A:3-1.1 et seq. and 10A3-6.1 (contraband).

meaningful post-deprivation judicial remedy for unlawful deprivation of property by public employees.  See New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 et seq. (2001). Accordingly, the Complaint does not state a claim for deprivation of property without due process in violation of the Fourteenth Amendment.  See Tomzek v. Blatter, 2008 WL 4738942 (W.D. Mich. Oct. 24, 2008) (state judicial remedy satisfies due process, even if prisoner is denied effective administrative grievance procedure).

Plaintiff Tormasi also alleges that the confiscation of his business records was a violation of the Fifth Amendment "Takings Clause."[4]  The Takings Clause of the Fifth Amendment, which was made applicable to the States through the Fourteenth Amendment, see Chicago, Burlington, & Quincy R.R. Co. v. City of Chicago, 166 U.S. 226 (1897), provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const., Amend. V.

----

[4] Plaintiff Tormasi characterizes the challenge to confiscation of his personal property as a "substantive due process" claim as well as a "takings clause" claim.  Because the Takings Clause of the Fifth Amendment "provides an explicit textual source of constitutional protection," Graham v. Connor, 490 U.S. 386, 395 (1989), it is unnecessary to discuss substantive due process in the context of the facts alleged here. See Wield v. Raemisch, 296 Fed. Appx. 534, 2008 WL 4523385 (7th Cir. Oct. 2, 2008).  In any event, just as the Takings Clause claim is not yet ripe, see infra, any related substantive due process claim is similarly unripe.

Ordinarily, a plaintiff cannot claim that the Takings Clause has been violated until after he has sought compensation from the State. See, e.g., Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 191-95 (1985). More specifically, the question whether a taking has occurred "simply cannot be evaluated until the [relevant state actor] has arrived at a final, definitive position." Id. at 191. Thereafter, the claim is not ripe until the State fails to provide adequate compensation. Id. at 195.

New Jersey provides an adequate post-taking procedure for determining whether a taking has occurred and for obtaining just compensation. Plaintiff Tormasi has not invoked that procedure; therefore, his federal claim is not ripe and must be dismissed without prejudice. See Edlin Ltd. v. City of Jersey City, 2008 WL 2185901 (D.N.J. May 23, 2008) (citing Peduto v. N. Wildwood, 696 F.Supp. 1004, 1009 (D.N.J. 1988) (describing the New Jersey inverse condemnation procedures)). As this Court must dismiss Plaintiff Tormasi's federal "Takings Clause" claim, the Court will decline to exercise pendent jurisdiction over his state law claim for inverse condemnation,[5] which will also be dismissed

---

[5] Plaintiff Tormasi alleges a state inverse condemnation claim under Article I, Paragraph 20 of the New Jersey Constitution. The Supreme Court of New Jersey has declared that the protection afforded by the New Jersey Constitution is "coextensive" with the protection afforded by the federal Constitution. See Mansoldo v. State, 187 N.J. 50, 58 (2006).

without prejudice.  See 28 U.S.C. § 1367(c)(1), (2); United Mine
Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

E.   Retaliation Claim

     To prevail on a retaliation claim, a plaintiff must
demonstrate that (1) he engaged in constitutionally-protected
activity; (2) he suffered, at the hands of a state actor, adverse
action "sufficient to deter a person of ordinary firmness from
exercising his [constitutional] rights;" and (3) the protected
activity was a substantial or motivating factor in the state
actor's decision to take adverse action.  Rauser v. Horn, 2001 WL
185120 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).  See also
Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt.
Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274
(1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir.
1999), cited with approval in Allah, 229 F.3d at 225.

     Plaintiff Tormasi alleges in general language that the
actions of all defendants were undertaken with the intent and
effect of retaliating against him for exercising or attempting to
exercise his constitutional rights.  The Complaint fails to state
a claim for retaliation.  First, it is not clear to what exercise
of constitutional rights Plaintiff Tormasi refers.  He has no
federal constitutional right to conduct a business from prison.
See, e.g., French v. Butterworth, 614 F.2d 23, 24 (1st Cir.),
cert. denied, 446 U.S. 942 (1980); Garland v. Polley, 594 F.2d

18

1220, 1221-22 (8th Cir. 1979); <u>Stroud v. Swope</u>, 187 F.2d 850, 851 (9th Cir.), <u>cert. denied</u>, 342 U.S. 829 (1951); <u>Johnson v. Wilkinson</u>, 42 F.3d 1388, 1994 WL 669857, *3 (6th Cir. 1994) (unpubl.), <u>cert. denied</u>, 514 U.S. 1071 (1995); <u>Valentine v. Gray</u>, 410 F.Supp. 1394, 1396 (S.D. Ohio).[6]  In addition, Plaintiff Tormasi alleges no facts suggesting that the state has created a liberty or property interest in conducting a business in prison. To the contrary, it is a prohibited act in New Jersey state prisons for an inmate to operate a business or a nonprofit enterprise without the approval of the Administrator.  <u>See</u> N.J.A.C. 10A:4-4.1, .705.   Thus, Plaintiff Tormasi also had no constitutional right to file tax returns or engage in litigation in connection with the business of ADS.  Nor do that facts alleged suggest that the actions of the defendants were such as to deter a person of ordinary firmness from exercising his constitutional rights.  Certainly, Plaintiff Tormasi has not been deterred from filing this and other federal litigation.[7]  He does

---

[6] To the extent the Complaint could be construed as asserting that Plaintiff Tormasi has been denied a constitutional right to conduct a business (including alleged rights to submit patent prosecution documents to the United States Patent and Trademark Office, or to prepare tax returns for ADS, or to correspond with counsel regarding such activities, or otherwise), the Complaint likewise fails to state a claim.

[7] Plaintiff Tormasi has filed several civil actions in this Court during the period of time referred to in the Complaint. <u>See</u> <u>Tormasi v. Hayman</u>, Civil No. 07-5683 (D.N.J.); <u>Tormasi v. Hayman</u>, Civil No. 08-4950 (D.N.J.); <u>Tormasi v. Hayman</u>, Civil No. 09-2330 (D.N.J.).

not identify any other constitutional rights that he has been
deterred from exercising.  Finally, nothing in the facts alleged
suggests that Plaintiff Tormasi's exercise of any constitutional
rights was a motivating factor in the confiscation and retention
of his personal property.  To the contrary, the provisions of the
New Jersey Administrative Code prohibiting prisoners from
operating a business, considered in conjunction with Plaintiff
Tormasi's failure to allege that he was given permission to
conduct a business, is as likely a motivation for the
confiscation of Plaintiff Tormasi's business records.

     To the extent Plaintiff Tormasi contends that the
confiscation of his property was in retaliation for his filing of
a state action for post-conviction relief, he likewise fails to
allege facts suggesting that the confiscation of his personal
property was the kind of activity that would deter a person of
ordinary firmness from exercising his right of access to the
court or that the state action for post-conviction relief was a
motivating factor in the confiscation and retention of his
personal property.  The claim for retaliation will be dismissed
without prejudice.

F.   The Equal Protection Claim

     Plaintiff Tormasi alleges that the implementation and
execution of the described policies and practices of the
defendants "are not enforced against others similarly situated

20

but, rather, are selectively enforced only against" himself (and ADS), in violation of his right to equal protection under the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). Its purpose "is to secure every person ... against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Thus, an individual may assert a "class of one" equal protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id.

"Class of one" claims lie "in a murky corner of equal protection law in which there are surprisingly few cases and no clearly delineated rules to apply." LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir. 1980). The Court of Appeals for the Third

Circuit has held, in one of few precedential opinions addressing the "class of one" theory:

> Our court has not had the opportunity to consider the equal protection "class of one" theory at any length. From the text of <u>Olech</u> itself, however, it is clear that, at the very least, to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.

<u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006). To survive dismissal, a "class of one" claim need not "name names" of persons who have been treated differently; however, "general accusations and the invocation of the Equal Protection Clause are not enough."  See <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 243-246 (3d Cir. 2008).  Plaintiff Tormasi's bare assertion that the actions described in the Complaint amount to a violation of the Equal Protection Clause is not sufficient to state a claim.  The Equal Protection claim will be dismissed without prejudice.

G.    <u>Failure to Train and Supervise</u>

Plaintiff Tormasi alleges that Defendants George Hayman, James Barbo, Michelle Ricci, Jeffrey Bell, James Drumm, Donald Mee, Jr., and Charles Warren, are liable to him for failure to train and supervise Defendants Derek Butler, Dolce, Harrison, Maginnis, Victor Sierra, and Vincent Wojciechowicz of the Special Investigations Division.

Where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train ... can fairly be said to represent official policy," City of Canton, 489 U.S. at 390, and that failure to train "actually causes injury," a supervisor may be held liable, Id.

In addition, in resolving the issue of liability for failure to train and supervise,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program.  ...  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training ... .  Moreover, for liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury.

Id. at 390-91.

Here, Plaintiff Tormasi has stated a claim for injury only with respect to one defendant, Vincent Wojciechowicz, only with respect to his detention of Plaintiff Tormasi's diskettes containing text files related to collateral challenges to his conviction for receiving stolen goods, a claim for denial of access to the courts.  Plaintiff has alleged no facts regarding the nature of the training programs or supervision applied at New Jersey State Prison.  The fact that one officer, alone, may not have been adequately trained is not sufficient to state a claim

for failure to train and supervise.  This claim will be dismissed without prejudice.

## V.   CONCLUSION

For the reasons set forth above, Plaintiff Tormasi's claim for denial of access to the courts may proceed as against Defendant Vincent Wojciechowicz, with respect only to his retention of diskettes related to Plaintiff Tormasi's collateral challenges to his conviction for receiving stolen goods.  All claims of Plaintiff ADS will be dismissed without prejudice.  All remaining claims of Plaintiff Tormisi will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e(c), for failure to state a claim.  However, because it is conceivable that Plaintiff Tormasi may be able to supplement his pleading with facts sufficient to overcome certain deficiencies noted herein, the Court will grant Plaintiff Tormasi leave to file an amended complaint.[8]

---

[8] Plaintiff Tormasi should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

An appropriate order follows.


                                   /S/ JOEL A. PISANO
                                   Joel A. Pisano
                                   United States District Judge

Dated: June 15, 2009