<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WALTER A. TORMASI, et al.,    :
                                  :    Civil Action No. 08-5886 (JAP)
             Plaintiffs,  :
                                  :
                v.             :    **OPINION**
                                  :
GEORGE W. HAYMAN, et al.,    :
                                  :
             Defendants.  :

**APPEARANCES:**

Plaintiffs <u>pro</u> <u>se</u>
Walter A. Tormasi
In his individual capacity
and as
representative on behalf of
Advanced Data Solutions Corp.
New Jersey State Prison
Second & Cass Streets
P.O. Box 861
Trenton, NJ 08625

Counsel for Defendant
Mary Beth Wood
Senior Deputy Attorney General
and
Susan Marie Scott
Deputy Attorney General
RJ Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625

**PISANO**, District Judge

    This matter was opened to the Court by Plaintiff Walter Tormasi filing a Complaint alleging various violations of his civil rights. By Opinion and Order [docket entry nos. 11 and 12] entered June 16, 2009, this Court ordered that the claim for denial of access to the courts could proceed as against Defendant Wojciechowicz, only with respect to Defendant Wojciechowicz's alleged retention of diskettes related to Plaintiff Tormasi's collateral challenges to his conviction for receiving stolen goods.

All other claims were dismissed and Plaintiff was granted leave to file an amended complaint addressing the deficiencies of the Complaint as described in this Court's Opinion.

On July 24, 2009, Plaintiff filed an Amended Complaint [docket entry no. 15]. This Court ordered the U.S. Marshals Service to serve summonses and the amended complaint on all defendants named in the Amended Complaint. The Marshals Service was able to effect service on all defendants except Jeffrey Bell, who could not be located at the address provided by Plaintiff.[1]

This matter is now before the Court pursuant to the Motion [docket entry no. 34] of all served defendants to Dismiss the Amended Complaint for failure to state a claim and Plaintiff's Cross-Motion [docket entry no. 38] to further amend the complaint and for reconsideration of this Court's Order [docket entry no. 12] dismissing all claims except the access-to-courts claim against Defendant Wojciechowicz.

I.  DISMISSAL FOR FAILURE TO STATE A CLAIM

This Court must dismiss, at any time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail

---

[1] The summons for Jeffrey Bell was returned unexecuted on November 17, 2009, with the notation that Defendant Jeffrey Bell could not be located at the address provided by Plaintiff. Plaintiff has failed to provide an address for this defendant or to otherwise effect service. See Fed.R.Civ.P. Rule 4(m). As the Amended Complaint otherwise fails to state a claim, however, it will be dismissed as against all defendants, including Jeffrey Bell.

to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).  See also Fed.R.Civ.P. 12(b)(6), permitting a party to move to dismiss a claim in a civil action for "failure to state a claim upon which relief can be granted."

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ...

3

claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ... It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

## II.   <u>BACKGROUND</u>

In the original Complaint, Plaintiff Tormasi alleged (on behalf of himself and Advanced Data Solutions Corporation) that, while confined at New Jersey State Prison, he filed United States Provisional Patent Application No. 60/568,346 with the United States Patent and Trademark office.   On May 17, 2004, Plaintiff Tormasi assigned to purported co-Plaintiff Advanced Data Solutions Corporation ("ADS") all his interest in his provisional patent application, in exchange for which he received all outstanding shares of ADS common stock and became its sole owner.   On January 10, 2005, Plaintiff Tormasi filed Patent Application No. 11/031,878 and, on February 7, 2005, assigned to ADS all of his interests in that patent application.   On January 29, 2008, the U.S. Patent and Trademark Office issued Patent No. 7,324,301, stemming from Plaintiff Tormasi's Application No. 11/031,878.   ADS is the registered owner of Patent No. 7,324,301.

The Complaint alleged that, on March 3, 2007, the defendants seized personal property consisting, for purposes of this action, of the following: (1) miscellaneous corporate paperwork;[2]

_____

[2] The seized corporate paperwork is alleged to include a patent assignment agreement; corporate resolutions authorizing, ratifying, and adopting the assignment agreement; shareholder ledgers; minutes of shareholder meetings; tax information and forms; and other undescribed related legal documents.

(2) patent-prosecution documents; (3) an unfiled provisional patent application; (4) several floppy diskettes; and (5) various legal correspondence between Plaintiff Tormasi and his attorney with respect to the patent applications and the business of ADS.

Plaintiff Tormasi alleged that he had pursued various administrative remedies for the return of his property. He alleges that Assistant Ombudsman Karen Boyd, an employee of the Department of Public Advocate, told him in a letter dated January 17, 2008, that "Please be advised that I met with Senior SID Investigator Wojiechowicz about the return of your property. He advised me that all permitted property was already returned."

Plaintiff Tormasi alleged that he needs the confiscated property to prove his ownership of ADS to the satisfaction of interested third parties.

> Absent such proof of ownership of ADS, plaintiff Tormasi is unable to directly or indirectly benefit from his intellectual-property assets, either by selling all or part of ADS; by exclusively or non-exclusively licensing his '301 patent to others; by using ADS or his '302 patent as collateral for obtaining personal loans or standby letters of credit; or by engaging in other monetization transactions involving ADS or its intellectual-property assets.

(Complaint, ¶ 22(a).) Plaintiff Tormasi also alleged that the confiscation of his corporate paperwork has prevented him from filing tax returns with the Internal Revenue Service on behalf of ADS. Plaintiffs alleged that, by confiscating the corporate records, Defendants violated Plaintiffs' First Amendment right to

just compensation for taking property, their Fifth and Fourteenth Amendment rights to due process in connection with deprivation of property, and their right of access to the Internal Revenue Service.

Further, the Complaint alleged that, without patent-prosecution documents, Plaintiffs are unable to enforce their patent rights by filing infringement actions. Plaintiffs alleged that, by confiscating their patent-prosecution records, Defendants deprived them of their right of access to the Courts.

The Complaint alleged that, without the unfiled provisional patent application, Plaintiffs are unable to proceed with a patent-prosecution proceeding before the U.S. Patent and Trademark Office. Plaintiffs alleged that Defendants' confiscation of the unfiled provisional patent application deprived them of their right of access to the United States Patent and Trademark Office and their right to just compensation for the taking of property under the Fifth and Fourteenth Amendments.

Plaintiff Tormasi alleged that the confiscated floppy diskettes contain text files related to his conviction for receiving stolen goods. He alleged that he has post-conviction relief petitions pending in state court and that, if they are unsuccessful, he may bring a federal habeas corpus action. He contended that confiscation of his floppy diskettes deprived him of

his right of access to the courts, including his right to represent himself in his pending state proceedings.

Plaintiff Tormasi contended that Defendants confiscated legal correspondence relating to his patent applications. Plaintiff Tormasi contended that confiscation of his legal correspondence violated his right to equal protection, because he has been treated differently from other similarly situated prisoners. Plaintiffs Tormasi and ADS also alleged that all of the constitutional violations alleged in the Complaint are asserted against them selectively, in violation of their right to equal protection.

Plaintiffs Tormasi and ADS also alleged that the constitutional violations alleged herein were undertaken in retaliation against them for exercising their constitutional rights, as described in the Complaint.

All of the above claims were brought against Defendants George W. Hayman (Commissioner of the New Jersey Department of Corrections), James Barbo (Director of the Division of Operations within DOC), NJSP Administrator Michelle Ricci, Associate Administrators Jeffrey Bell, James Drumm, Donald Mee, Jr., and Charles Warren, and Special Investigations Division Investigators Derek Butler, Dolce, Harrison, Maginnis, Victor Sierra, and Vincent Wojciechowicz.

In addition, Plaintiffs alleged that Defendants George W. Hayman, James Barbo, Michelle RicciJeffrey Bell, James Drumm,

Donald Mee, Jr., and Charles Warren, are liable to them because of their failure to train and supervise Defendants Derek Butler, Dolce, Harrison, Maginnis, Victor Sierra, and Vincent Wojciechowicz.

In addition, Plaintiffs asserted that Defendants were liable to them under New Jersey state law of inverse condemnation.

Plaintiffs sought compensatory and punitive damages and injunctive relief. This Court construed the Complaint as asserting the following claims: (1) denial of access to the courts with respect to Plantiff's state post-conviction relief proceeding and with respect to patent matters, (2) deprivation of property in violation of the Due Process Clause of the Fourteenth Amendment, (3) violation of the Takings Clause of the Fifth Amendment, (4) retaliation, (5) denial of the right to conduct a business, (6) violation of rights under the Equal Protection Clause, and (7) failure to train and supervise. This Court dismissed without prejudice all claims asserted on behalf of ADS, as corporations may appear in federal court only through counsel. This Court permitted Plaintiff Tormasi's claim for denial of access to the courts to proceed, only with respect to the claim related to his post-conviction relief proceedings, and only as against Defendant Wojciechowicz. In addition, the Court dismissed with prejudice Plaintiff Tormasi's claim that he had been deprived of a constitutional right to conduct a business while incarcerated

(including all related claims such as the related claims that he has a constitutional right to communicate with the U.S. Office of Patents and Trademarks regarding patent applications, and to communicate with counsel regarding the conduct of the business, and to conduct litigation with respect to the business, and to prepare and submit tax returns on behalf of the business), dismissed with prejudice Plaintiff Tormasi's claim for deprivation of property without procedural due process, and dismissed all of Plaintiff Tormai's remaining claims without prejudice.

The Amended Complaint re-asserts all of the claims asserted in the original Complaint, in virtually identical language.   In addition, Plaintiff characterizes certain actions as violating his right to freedom of speech under the First Amendment, including the confiscation of corporate paperwork, the confiscation of patent-prosecution documents, the confiscation of Plaintiff Tormasi's patent application, the confiscation of his floppy diskettes, and the confiscation of business-related legal correspondence. Finally, Plaintiff alleges that he is afraid to perform certain business-related activities for fear of disciplinary actions by the defendants.

### III.   DISCUSSION

The moving defendants seek dismissal of all claims asserted in the Amended Complaint.

### A.   Claims Previously Dismissed

In its June 2009 Opinion and Order, this Court dismissed the following claims: (1) without prejudice, all claims of ADS, because ADS must appear in federal court through counsel; (2) with prejudice, all claims of denial of access to courts, except that the claim alleging denial of access to the courts with respect to Plaintiff Tormasi's state petition for post-conviction relief could proceed as against Defendant Wocjiechowicz, only, (3) with prejudice, Plaintiff Tormasi's claim that he had been deprived of a constitutional right to conduct a business while incarcerated, including all related claims such as the related claims that he has a constitutional right to communicate with the U.S. Office of Patents and Trademarks regarding patent applications, and to communicate with counsel regarding the conduct of the business, and to conduct litigation with respect to the business, and to prepare and submit tax returns on behalf of the business, (4) with prejudice, Plaintiff Tormasi's claim for deprivation of property without procedural due process, (5) without prejudice, all remaining state and federal claims.  Plaintiff was also granted leave to file an amended complaint addressing the deficiencies of the Complaint.

Plaintiff filed an Amended Complaint reasserting all the claims asserted in the original Complaint, and adding a claim that certain activities deprived him of his First Amendment right to freedom of speech.  With respect to all of Plaintiff's federal

claims asserted in the original Complaint and re-asserted in the Amended Complaint, Plaintiff has failed to address the deficiencies identified in this Court's prior Opinion.  Accordingly, all of those federal claims will be dismissed with prejudice for the reasons stated in this Court's prior Opinion [11].

That leaves remaining only the following: (1) Plaintiff Tormasi's claim against Defendant Wocjiechowic for denial of access to the courts with respect to his state and federal petitions for post-conviction relief, (2) Plaintiff Tormasi's freedom of speech claim, and (3) Plaintiff Tormasi's cross-motion for leave to file a second amended complaint and for reconsideration of this Court's prior Opinion and Order.

B.    The Access To Courts Claim

Plaintiff alleges that the confiscation of certain diskettes has impaired his ability to challenge his conviction in both pending state post-conviction proceedings and a contemplated future federal habeas corpus proceeding under 28 U.S.C. § 2254.  With respect to this claim, the Court notes that the attachments to Plaintiff's Amended Complaint indicate that he was convicted, pursuant to a guilty plea, of third-degree receiving stolen property, contrary to N.J.S.A. 2C:20-7, and that he was sentenced to a four-year term of imprisonment on March 27, 1998, to be served concurrently to another sentence he was then serving.  The nature of Plaintiff's challenge to his conviction is ineffective

assistance of counsel in connection with his guilty plea, which he contends rendered his plea not knowing, voluntary and intelligent. In addition, the Court will take judicial notice of its own docket that Plaintiff has not yet filed any federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  More specifically, Plaintiff alleged the following:

> The confiscation of plaintiff Tormasi's floppy disks injured plaintiff Tormasi, as follows:
>
> (a) Plaintiff Tormasi is in the process of attacking his receiving-stolen-property conviction (Somerset County Indictment No. 97-12-0563-I) in the courts.  On July 8, 2002, and May 23, 2006, plaintiff Tormasi filed, respectively, initial and supplemental petitions for post-conviction relief (PCR) with the Law Division in Somerset County (Exhibits E and F).  Should such PCR petitions and ensuing appeals be denied (which is within the realm of possibility), plaintiff Tormasi intends to file a petition for habeas corpus with this Court. Plaintiff Tormasi's confiscated floppy disks contain text files relating to his aforementioned conviction. Without access to his floppy disks (or hard copies thereof), plaintiff Tormasi is unable to prepare and file his contemplated habeas corpus petition with the courts.  The claims intended to be raised in plaintiff Tormasi's contemplated habeas corpus petition (as identified in his PCR petitions) have an arguable basis in law and fact and are therefore nonfrivolous in nature.
>
> (b) Plaintiff Tormasi is litigating his aforementioned PCR petitions pro se, as is his right under the laws of New Jersey.  Without access to his floppy disks (or hard copies thereof), plaintiff Tormasi is unable to adequately, effectively, and meaningfully represent himself during PCR proceedings, thus forcing plaintiff Tormasi (against his will) to forego pro se representation in favor of the assignment of counsel during the litigation of his PCR matter. ...

(Amended Complaint, ¶ 37.)

Apparently in an effort to bolster his access-to-courts claim, Plaintiff has attached to the Amended Complaint a copy of a Supplemental Petition and Appendix for Post-Conviction Relief, filed in state court on April 22, 2006, almost a year before the alleged confiscation of his diskettes in March, 2007, and more than three years before the filing of the Amended Complaint in July, 2009. Plaintiff Tormasi has not alleged the status of his state post-conviction relief proceedings, in either the Amended Complaint or the briefing in opposition to the Motion to Dismiss.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has, as a corollary, the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the

16

preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).

There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  ... [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim.  He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

In addition, one alternative for providing prisoners meaningful access to the courts is the provision of counsel. See e.g., Bounds, 430 U.S. at 828 (approving the provision of "adequate assistance from persons trained in the law"); Rauso v. Zimmerman, 2006 WL 3717785, *4 (M.D. Pa. 2006) (collecting cases); Pressley v. Johnson, 2006 WL 2806572, *5 (W.D. Pa. 2006) (collecting cases).[3]

---

[3] The parties here dispute whether Plaintiff is represented by counsel in his state PCR proceedings, or whether that appointment resulted from Plaintiff's inability to proceed pro se because of the alleged confiscation of his diskettes. This Court need not resolve this factual issue in order to decide the Motion to dismiss this claim.

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury."  See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Plaintiff has asserted that the confiscation of his diskettes, which allegedly contained "text files" from his trial, relates to one of the protected forms of litigation under the constitutional right of prisoners to access the courts - collateral challenges to a conviction.  He has failed, however, to allege any actual injury.

In two cases decided during the summer of 2009, the Supreme Court and the Court of Appeals emphasized the necessity to plead facts that show entitlement to relief.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

Here, Plaintiff has alleged that diskettes were taken, and that those diskettes contained text files from his challenged conviction, but he has nevertheless failed to plead facts demonstrating any actual injury.  For example, the attachments to the Amended Complaint indicate that the state petition for post-conviction relief was briefed prior to the alleged confiscation of the diskettes.  Although three years had elapsed between the date of the confiscation and the date the Amended Complaint was filed, Plaintiff failed to allege facts showing that the confiscation of the diskettes had any effect on his ability to litigate his state

19

petition for post-conviction relief.  He has, for example, failed to allege the inability to file appropriate briefs due to the confiscation of his diskettes or that he suffered an adverse ruling as a result of the confiscation of his diskettes.  As he had copies of his briefs when he filed the Amended Complaint, he apparently had other means to obtain copies of at least some of the documents relevant to his state PCR action.  Instead, Plaintiff has alleged in conclusory fashion merely the elements of an access-to-courts claim, without factual support.  In light of the more stringent requirements for factual pleadings that now govern review of motions to dismiss, the Amended Complaint fails to state a claim with respect to the state PCR action.

The Amended Complaint is likewise deficient with respect to any hypothetical future federal habeas proceeding.  As an initial matter, Plaintiff's submissions indicate that he was sentenced on March 27, 1998, to a four-year sentence, to be served concurrently with a sentence he was already serving.  It is this four-year sentence that he alleges he seeks to challenge through a federal habeas proceeding.

A state prisoner challenging a state conviction through federal habeas corpus must establish, as an initial matter, that he is "in custody" pursuant to the challenged judgment.  See 28 U.S.C. § 2254(a).  Thus, a federal court has no jurisdiction to entertain a habeas petition unless the petitioner meets the "in custody"

20

requirement at the time he files his petition.  Indeed, as the Court of Appeals for the Third Circuit has put it, "custody is the passport to federal habeas corpus jurisdiction." Dessus v. Pennsylvania, 452 F.2d 557, 560 (3d Cir. 1971), cert. denied, 409 U.S. 853 (1972).  "Custody" is defined not only as physical confinement, but includes circumstances entailing such limitations on a person's liberty as those imposed during parole. See Maleng v. Cook, 490 U.S. 488, 491 (1989); see also Hensley v. Mun. Court, 411 U.S. 345 (1973) (determining that a habeas petitioner released on his own recognizance, who suffered restraints on freedom of movement not shared by public generally, met "in custody" requirement).  However, a habeas petitioner is not "in custody" under a conviction when the sentence imposed for that conviction has fully expired at the time his petition is filed.  See Maleng, 490 U.S. at 491.  As it appears from the Amended Complaint that Plaintiff Tormasi has already fully served this four-year sentence, it does not appear that he would have a viable federal habeas petition at any time in the future.

Moreover, Plaintiff again has failed to allege any facts suggesting that the success of any potential future federal habeas petition, if one could proceed to a decision on the merits, would be dependent on his recovery of the confiscated diskettes.  Before bringing a federal petition, a state prisoner must exhaust his state remedies, 28 U.S.C. § 2254(b)(1)(A), and a federal petition

generally is decided based upon the record created in those state proceedings.  As Plaintiff Tormasi has failed to allege facts showing that the confiscation of his diskettes has in any way impaired the prosecution of his state post-conviction relief proceedings, he has consequently failed to allege facts showing that his ability to proceed in a federal habeas proceeding would be impaired by the confiscation of his diskettes.  The access-to-courts claims will be dismissed with prejudice for failure to state a claim.

C.   The Freedom of Speech Claim

Plaintiff alleges that the confiscation of corporate paperwork, the confiscation of patent-prosecution documents, the confiscation of Plaintiff Tormasi's patent application, the confiscation of his floppy diskettes, and the confiscation of business-related legal correspondence violate his rights to freedom of speech under the First Amendment.  In short, Plaintiff asserts that enforcement of the regulations against operating a business, and the related confiscation of business-related materials, violates his right to freedom of speech.  See N.J.A.C. 10A:4-4.1, .705 (it is a prohibited act in New Jersey state prisons for an inmate to operate a business or a nonprofit enterprise without the approval of the Administrator).

"In the First Amendment context, ... a prison inmate retains those First Amendment rights [of freedom of speech and association]

22

that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication). <u>See also</u> <u>Thornburgh v. Abbott</u>, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison inmates). <u>Cf.</u>, <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989) (there is no substantive due process right to "unfettered visitation"). Thus, to the extent not inconsistent with their status as prisoners or with legitimate penological objectives, inmates have a First Amendment right to communicate with "friends, relatives, attorneys, and public officials by means of visits, correspondence, and telephone calls." <u>Owens-El v. Robinson</u>, 442 F.Supp. 1368, 1386 (W.D. Pa.) (citation omitted), <u>supplemented and finalized</u>, 457 F.Supp. 984 (W.D. Pa. 1978), <u>aff'd in part and vacated in part on other grounds sub nom.</u>, <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754 (3d Cir. 1979). <u>See also</u>, <u>Bazzetta v. McGinnis</u>, 2002 WL 529956 (April 10, 2002 6th Cir.) (prisoners retain a First Amendment right to non-contact visits with intimate associates, including minor siblings, nieces, and nephews, even while incarcerated).

23

When a prison regulation or practice impinges on inmates' speech and association rights, "the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).  The Supreme Court has identified four factors to be considered in determining the reasonableness of the regulation or practice at issue.

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. ... Thus, a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. Moreover, the governmental objective must be a legitimate and neutral one. ...
>
> A second factor relevant in determining the reasonableness of a prison restriction ... is whether there are alternative means of exercising the right that remain open to prison inmates. ...
>
> A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. ...
>
> Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.  This is not a "least restrictive alternative" test. ...

Turner, 482 U.S. at 89-90  (citations omitted).

As noted in this Court's prior Opinion, Plaintiff Tormasi has no federal constitutional liberty or property interest, under the Fourteenth Amendment, in conducting conduct a business from prison. See, e.g., French v. Butterworth, 614 F.2d 23, 24 (1st Cir.), cert.

<u>denied</u>, 446 U.S. 942 (1980); <u>Garland v. Polley</u>, 594 F.2d 1220, 1221-22 (8th Cir. 1979); <u>Stroud v. Swope</u>, 187 F.2d 850, 851 (9th Cir.), <u>cert. denied</u>, 342 U.S. 829 (1951); <u>Johnson v. Wilkinson</u>, 42 F.3d 1388, 1994 WL 669857, *3 (6th Cir. 1994) (unpubl.), <u>cert. denied</u>, 514 U.S. 1071 (1995); <u>Valentine v. Gray</u>, 410 F.Supp. 1394, 1396 (S.D. Ohio 1975).  Similarly, he has no such right under the First Amendment.  <u>See</u> <u>Garland v. Polley</u>, 594 F.2d 1220, 1222 (8th Cir. 1979); <u>Roy v. Stanley</u>, 2004 WL 2240051, 110 Fed.Appx. 139 (1st Cir. 2004).

Even if Plaintiff Tormasi could establish a First Amendment right to conduct a business, the no-business rule is valid.  "A dismissal on the pleadings is possible if a 'common-sense connection' exists between a legitimate penological objective and the challenged regulation or action."  <u>Whitmire v. Arizona</u>, 298 F.3d 1134, 1136 (9th Cir.2002).  It cannot seriously be contested that there is a rational connection between the no-business rule and the legitimate penological objective of maintaining security and efficiency at state correctional institutions, insofar as operating a business inside a correctional facility would seriously burden operation of incoming and outgoing mail procedures, could result in the retention of substantial amounts of materials in cells, could result in the introduction of contraband into prisons, could create a host of potential problems with respect to relations among prisoners, could impair safe and efficient movements of

25

prisoners within the prison, etc.  On the other hand, prisoners can appoint non-prisoners to manage their legitimate business interests.  Indeed, Plaintiff does not here even attempt to allege facts demonstrating that the no-business rule does not satisfy the <u>Turner</u> test.

<u>Abu-Jamal v. Price</u>, 154 F.3d 128 (3d Cir. 1998), the sole case on which Plaintiff Tormasi relies, is inapposite.  There, the inmate argued that the rule against operating a business was employed against the inmate as a pretext for retaliating against him on the basis of the content of his writings.  The Court of Appeals found that the inmate had a reasonable chance of showing, for purposes of obtaining injunctive relief, that the business or profession rule had not been applied to him on a neutral basis, but was instead applied based on the content of his writings.  The Court did <u>not</u> hold that an inmate had a First Amendment right to conduct a business while in prison.  To the contrary, the Court noted that, "There are no doubt many businesses or professions, which if practiced within the prison, would necessarily burden prison officials or other inmates."  154 F.3d at 135.

This First Amendment claim will be dismissed with prejudice for failure to state a claim.[4]

---

[4] Plaintiff also alleges that he fears engaging in his business activities because he might be subject to disciplinary proceedings for violating the no-business rule.  As the rule prohibiting prisoners from conducting a business is a rational and reasonable disciplinary rule, its enforcement does not

D.   <u>Pendent State Law Claims</u>

To the extent the Amended Complaint could be construed to assert any claims under state law, they will be dismissed without prejudice.

Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over a related state law claim.  The Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, "the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).  As no such extraordinary circumstances appear to be present, this Court will dismiss any state law claims without prejudice.

F.   <u>The Cross-Motion for Leave to Amend and for Reconsideration</u>

Plaintiff Tormasi alleges that he should be permitted to file a second amended complaint so as to sufficiently allege the personal involvement of all the defendants in the various acts complained of or otherwise to cure any deficiencies in the Amended Complaint.

_____

violate Plaintiff's constitutional rights.

As the failure to adequately allege the personal involvement of all defendants factored into the decision only with respect to the access-to-courts claim involving actions for post-conviction relief, and because that claim fails for other reasons, no purpose would be served by any proposed second amended complaint further alleging the personal involvement of all defendants in the alleged constitutional violations.  Moreover, before drafting his Amended Complaint, Plaintiff Tormasi had the benefit of this Court's screening Opinion detailing the deficiencies in the pleading of his various claims.  He has presented nothing to this Court to suggest that, in a further amendment, he could state a claim.  Accordingly, this request will be denied.

In addition, the request for reconsideration, filed almost sixteen months after the challenged Opinion and Order, is both untimely and meritless, and will be denied.

Local Civil Rule 7.1(i) governs motions for reconsideration. See Bowers v. National Collegiate Athletic Ass'n, 130 F.Supp.2d 610, 612 (D.N.J. 2001).  The Local Rule specifies that a motion for reconsideration must be filed within 10 days after the entry of the order or judgment challenged.  In deference to a litigant's pro se status, however, the Court may relax this strict deadline to prevent surprise or injustice.  See, e.g., Damiano v. Sony Music Entertainment, Inc., 2000 WL 1689081, *5 (D.N.J. 2000); Former L.Civ.R. 7.1 cmt 6.b.(2) (2003).  Plaintiff has failed to show any

reason why he could not have submitted this Motion for reconsideration earlier.  Accordingly, this Court will not excuse the untimeliness of the request.

In addition, the Local Rule specifies that a separate brief shall be filed "setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked."  The standard for reargument is high and reconsideration is to be granted only sparingly.  See United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994); NL Industries, Inc. v. Commercial Union Insurance, 935 F. Supp. 513, 515 (D.N.J. 1996).

Ordinarily, a motion for reconsideration may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue.  See SPIRG v. Monsanto Co., 727 F. Supp. 876, 878 (D.N.J.), aff'd, 891 F.2d 283 (3d Cir. 1989).  Thus, matters may not be introduced for the first time on a reconsideration motion. See, e.g., Resorts Int'l, Inc. v. Greate Bay Hotel and Casino, Inc., 830 F. Supp. 826, 831 (D.N.J. 1992); Egloff v. New Jersey Air National Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988).  Absent unusual circumstances, a court should reject new evidence which was not presented when the court made the contested decision.  See Resorts Int'l, 830 F. Supp. at 831 n.3.  Moreover, L.Civ.R. 7.1(i) does not allow parties to restate arguments which the court has already considered.  Thus, a difference of opinion with the court's

decision should be dealt with through the normal appellate process. Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 162 (D.N.J. 1988); see also Chicosky v. Presbyterian Medical Ctr., 979 F. Supp. 316, 318 (D.N.J. 1997); NL Industries, Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions . . . may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."). Furthermore, the court will grant a motion for reconsideration only if the movant establishes that the court overlooked "dispositive factual matters or controlling decisions of law." See Rouse v. Plantier, 997 F. Supp. 575, 578 (D.N.J. 1998); Starr v. JCI Data Processing, Inc., 767 F. Supp. 633, 635 (D.N.J. 1991). Again, however, "the court may, in the exercise of its discretion, consider evidence offered for the first time on a motion for reargument, particularly if the evidence may lead to a different result." Former L.Civ.R. 7.1 cmt 6.f. With these standards in mind, the Court will now turn to Plaintiff's motion for reconsideration.

Plaintiff has not pointed to any facts or legal authority that this Court overlooked in rendering its prior Opinion and Order. In the course of considering the sufficiency of the Amended Complaint, this Court has revisited its holdings with respect to all claims asserted in the original Complaint, and it has found no error. The request for reconsideration will be denied.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Amended Complaint will be dismissed in its entirety.   An appropriate order follows.


                                        s/ Joel A. Pisano
                                        Joel A. Pisano
                                        United States District Judge

Dated: March, 14, 2011

31